```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :    CRIMINAL ACTION
                              :
          v.                  :
                              :
TYREE LAWSON                  :    NO. 08-276
```

MEMORANDUM

McLaughlin, J.                                          May 15, 2009

      The defendant is charged with assault on a Federal Officer with a dangerous weapon.  He has moved to suppress the statements he gave to the police after his arrest.  The Court will deny the motion.

I.  State of Facts

      On April 17, 2008, James Burke, a supervisor of the Fugitive Task Force of the United States Marshal Service received an arrest warrant for Tyree Lawson dated July 19, 2006.  Someone in the Gun Task Force came to Deputy Burke stating that he was looking for Mr. Lawson in connection with the warrant.  The charges were for attempt to commit murder, aggravated assault, criminal conspiracy, violation of the Uniform Firearms Act, possession of an instruction of crime, terroristic threats, simple assault, recklessly endangering another person, and criminal mischief.  This warrant was given priority by the Force because it involved a shooting.

Deputy Burke assigned the warrant to Deputy Steve Mason to assist the gun violence unit in the location and apprehension of Tyree Lawson.  When the members of the task force attempted to stop Mr. Lawson at 5th & Annsbury, Mr. Lawson fled the scene.  A shot was fired during the attempted apprehension of the defendant.  Deputy Burke instructed Deputy Mason to seek medical attention at the hospital.  The Task Force then received information that the defendant was at 415 West Raymond Street.  They made a perimeter around the residence and called in the SWAT team.  The SWAT team responded to the scene and removed the defendant from 415 West Raymond Street.

Nicholas Via is a police detective assigned to the East Detectives Special Investigation Unit of the Philadelphia Police Department.  On April 17, 2008, he was notified by way of police radio of a report of a shooting involving members of the United States Marshal's Service at 5th & Annsbury at approximately 12:55 p.m.  He and his commanding officer and other members of the East Detectives, including Detective Dave Rash, went to 5th & Annsbury.  The area was cordoned off with police tape.  They stayed there for about five minutes.

Later that afternoon, Detective Via received information that Tyree Lawson was barricaded in a house on the 400 block of Raymond Street.  The detective went to that location at approximately 2:15 to 2:30 p.m. and saw Mr. Lawson handcuffed

2

and being placed in the rear of a police emergency patrol wagon. Mr. Lawson was taken to East Detectives at 3901 Whittaker.

Mr. Lawson was brought into East Detectives at 3:00 p.m. He was interviewed by Detective Rash in Detective Via's presence. Detective Rash took biographical information from Mr. Lawson. Before any <u>Miranda</u> warnings were given, Detective Rash told Mr. Lawson that he was being accused of trying to run over a U.S. Marshal with his car and that the detectives wanted to give him an opportunity to tell his side of what happened. The detectives might also have told the defendant that a deputy marshal had fired a shot into his car. The defendant expressed a willingness to speak to them. He said: "Yeah, I want to tell you my side of the story." That exchange was never recorded or written down.

Detective Rash then advised Mr. Lawson of his <u>Miranda</u> rights in Detective Via's presence at 4:25 p.m. Detective Rash asked Mr. Lawson the following questions and the defendant gave the following answers:

Question 1: "Do you understand that you have the right to keep quiet and do not have to say anything at all?" Mr. Lawson answered "yes."

Question 2: "Do you understand that anything you say can and will be used against you?" Mr. Lawson answered "yes."

Question 3: "Do you want to remain silent?" Mr. Lawson answered "no."

Question 4: "Do you understand that you have a right to talk with a lawyer before we ask you any questions?" Mr. Lawson answered "yes."

Question 5: "Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until the lawyer is appointed for you free-of-charge?" Mr. Lawson answered "yes."

Question 6: "Do you want either to talk to a lawyer at this time or have a lawyer with you while we ask you questions?" Mr. Lawson answered "no."

Question 7: "Are you willing to answer questions of your own freewill without force or fear and without any threats or promises having been made to you? Mr. Lawson answered "yes."

The questions were read to Mr. Lawson and his answers were recorded on the interview record which is Government Exhibit 3. The defendant's answers were not recorded on a Miranda card because there was a shortage of the Miranda forms that they normally use at East Detectives.

Detective Rash then asked the defendant questions. The interview took place in front of a computer. Detective Rash sat at the keyboard and Mr. Lawson was to his left. Detective Via stood one foot away. Detective Via witnessed the entire

interview of Mr. Lawson.  Detective Rash typed up the questions and answers on the computer and Mr. Lawson was asked to read the statement carefully.  Mr. Lawson appeared to do so.  He signed both pages, dated it and put a time of 5:20 p.m.

At approximately 7:00 p.m., Detective Via and Detective Rash were told that Mr. Lawson wanted to make an addition to his previously recorded statement.  Between 5:20 p.m., when his statement ended, and 7:00 p.m., the defendant was in the cellblock area of the division.  The defendant was brought back into the Detectives Special Investigation Unit.  The computer was not working and Detective Rash recorded the additional statement by hand.  Detective Rash wrote on the statement by hand: "On 4/17/08 at approximately 7 p.m., Tyree Lawson did ask to add to his statement."  The statement then said "I did not know anyone was behind me.  I apologize and the only thing I saw was the black SUV, if it's any consolation."  Mr. Lawson read it and signed and dated it and put a time on it.

During this period, Mr. Lawson was not given the opportunity to make any phone calls.  He did not ask to call anyone.

II.  Discussion

The defendant argues that his statements should be suppressed because he was not properly advised of his Miranda rights before questioning and any statements that he made were not voluntary.

The Court's findings of fact establish that the defendant was advised of his Miranda rights before he was questioned.  The Court finds no infirmity with the way in which the rights were administered.  The defendant's waiver of his rights was knowing and voluntary.

Nor is there any doubt that the statements were otherwise voluntary. The defendant arrived at the police station at 3:00 p.m.  He was advised of his rights at 4:25 p.m.  Before that, he was processed and the detectives took biographical information from him.  He does not appear to have been suffering from any alcohol or drug problems.  He volunteered to add to this statement at 7:00 p.m.  The Court sees no evidence of coercion.

An appropriate Order shall issue separately.